UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-80208-CANNON

UNITED STATES OF AMERICA,

Plaintiff,

vs.

KENNETH BROWN, III,

Defendant.

_______________________________________/

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE**

## I. Inadmissible character evidence

Evidence of a defendant's character trait is not admissible to prove he acted in conformity with that character trait on a particular occasion. Fed. R. Evid. 404(b). Here, the government offers evidence Mr. Brown had a particular character trait – a sexual interest in minors – to prove he acted in conformity with that character trait in committing the charged offenses. Because that evidence is not intrinsic to the charged offenses, fails to satisfy rule 404(b), and is substantially more prejudicial than probative under rule 403, Mr. Brown objects.

**The proffered evidence.**

The evidence of Mr. Brown's sexual interest in minors comes from two sources. First, statements made during an online chat with an undercover agent suggest Mr. Brown sent pictures of his genitalia to minors, received nude images from minors, and tried to engage in sexual activity with his prepubescent cousin (hereinafter "chat evidence"). Second, the government found lawful, constitutionally protected, but

"sexually themed child media" on a cell phone agents located in Mr. Brown's pocket during his arrest.

**A. The chat evidence is neither intrinsic evidence of the crimes charged nor admissible under Fed. R. Evid. 404(b).**

In *United States v. Heidebur*, 122 F.3d 577 (8th Cir. 1997), the defendant was charged with knowing possession of sexual images of his own 12-year-old stepdaughter. At trial, the girl's mother testified that she found illicit photographs after she discovered her daughter alone with the defendant and he told her he had been sexually abusing her. An FBI agent then testified that the defendant had confessed to him as well that he had abused the girl and he had taken photographs during the abuse.

The government argued this evidence of the prior sexual abuse was admissible because it was "inextricably intertwined" with the possession offense. The evidence explained why the girl's mother began looking for the photographs in the first place, providing context and completing the story of the offense. The government also argued the evidence was independently admissible under rule 404(b) because, among other things, it provided evidence he had committed the possession offense "knowingly." *Id*. at 580-81.

The *Heidebur* court rejected both arguments. First, the court explained that the mother's "motivation in searching . . . ha[d] nothing whatsoever to do with the factual setting of the *crime* charged in this case." *Id*. at 580. While her motive may have provided "background information about the events leading to the *discovery* of the photos," her motive was "not an integral part of the defendant's alleged *possession*

of those photos." *Id*. In short, the jury would have received "a coherent picture of the facts of the charged crime" even without testimony about the abuse. *Id*.

In like manner, the chat evidence here is not intrinsic to the offense. The statements were made *after* the distribution was complete and they relate only to independent bad acts of the defendant. Unlike the statements Heidebur made, the government will offer no evidence that any of the videos distributed (or later found on Mr. Brown's phone) were the product of the bad acts he purportedly discussed in the chat evidence. In fact, the government will offer no evidence corroborating whether the statements were even true. Thus, the chat evidence here is even more attenuated than the evidence offered in *Heidebur* and is unnecessary to provide the jury with "a coherent picture of the charged crime[s]."

The *Heidebur* court also rejected the government's argument under rule 404(b) argument that the defendant's statements of prior abuse demonstrated his "knowing" possession of the images in the charged offense:

> This, however, is virtually the definition of inadmissible propensity evidence. We cannot see any way in which the defendant's abuse of his stepdaughter is probative of his knowing possession of the photographs, other than by establishing a propensity for these kinds of crimes.

*Id*. at 581. The same is true here: the chat evidence is only probative of Mr. Brown's knowledge if it is offered as propensity evidence – precisely the kind of evidence rule 404(b) was created to exclude.[1]

[1] The government points to two unpublished, *non-binding*, Eleventh Circuit opinions to suggest the chat evidence is admissible to show Mr. Brown's sexual interest in minors. *See United States v. Chase*, 367 F. App'x 979 (11th Cir. 2010) and *United States v. Levinson*, 504 F. App'x 824 (11th Cir. 2013). In both cases, the government

**B. The evidence of "sexually themed child media" is inadmissible propensity evidence under Fed. R. Evid. 404(b).**

In *United States v. Johnson*, 439 F.3d 884 (8th Cir. 2006), the court reversed convictions for receipt and possession of child pornography after the district court admitted extrinsic evidence of the defendant's sexual interest in minors. The government charged Johnson after agents found child pornography on his devices during a search of his home. At trial, the government introduced evidence of printed materials the agents found in his home that contained stories about rape of teenage girls.

Like it does here, the government argued the stories proved the defendant "knowingly and intentionally possessed the prohibited material" and "disprove[d] any claim of mistake," in part because the content of the stories was similar to the content of some of the images he possessed. *Id.* at 888. Though the *Johnson* court agreed his possession of the stories showed he was more likely to knowingly possess child pornography because it demonstrates he has a particular "type of interest," it noted the government's argument was "essentially the same one rejected in *United States v. Heidebur*" and found the stories were inadmissible propensity evidence. *Id.*

Here, the thousands of lawful, constitutionally protected files the agents found on Mr. Brown's cell phone upon arrest are no different than the rape stories the agents found in *Johnson*. The government again claims to offer them as evidence of

---

charged the defendants with enticement of a minor to engage in unlawful sexual activity rather than possession or distribution of child pornography. Neither case addresses the Eighth circuit's analysis and conclusion that this evidence is nothing more than pure propensity evidence.

Mr. Brown's knowledge, motive, and that he did not mistakenly possess and distribute child pornography, but, like the stories in *Johnson*, they are evidence of nothing but propensity and therefore inadmissible.

Moreover, the relevance of extrinsic evidence is "a function of its similarity to the offense charged." *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*). "In this regard, . . . 'a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand.'" *Id.* (quotation omitted). "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Id.*

Here, the relevant state of mind is whether Mr. Brown knew the images distributed and possessed contained child pornography. *See* Eleventh Circuit Pattern Jury Instructions, O83.4. In other words, the government must prove an unlawful intent. Proving he intended to possess *lawful* materials – a different intent – serves no relevant purpose. And proving Mr. Brown simply "'has a thing for children' falls squarely within the category of propensity evidence." *Tennessee v. Rodriguez*, 254 S.W.3d 361, 375 (Tenn. 2008) (reversing conviction based on evidence defendant had previously possessed child pornography in trial for child rape and aggravated sexual battery). *See also Heidebur*, 122 F.3d at 579.

## II. The Telegram email

Federal agents emailed a subpoena to Telegram seeking subscriber information related to multiple email addresses and a phone number. Telegram drafted and sent an email in response. The government does not know who sent the email – the signature block indicated it was from "The Telegram Team" – or how the information provided in the email was collected, maintained or produced. The email itself indicates it may not be "a full and complete response to the requests [the agent] made." At trial, the government plans to call no witness to verify anything about the email nor offer any affidavit from Telegram regarding the circumstances under which the email was produced. The government plans to offer the email as proof of the truth of the matters asserted therein. Mr. Brown objects.

The Sixth Amendment's Confrontation Clause prohibits the government from offering "testimonial hearsay" against a defendant if the declarant is unavailable and the defendant has not had a prior opportunity to cross examine the declarant. *Crawford v. Washington*, 541 U.S. 35 (2004). Here, the government seeks admission of an email with an unknown and unavailable writer to prove the truth of the matters asserted in that email. Mr. Brown has not had an opportunity to cross-examine the writer of the email. Thus, in determining its admissibility under the Sixth Amendment, the only question for this Court is whether the email is "testimonial."

The government argues the email is not testimonial because "the Sixth Amendment only applies to statements made with the primary purpose of establishing or proving past events for potential use in a criminal prosecution," Gov't

Mot. at 17, and points out that "[b]usiness records created for the administration of an entity's affairs are generally not testimonial." *Id*.

But the email is not a business record. If it were a business record, the government would not be attempting to convince this Court to admit the record under Fed. R. Evid. 807. The *email* was not a record that Telegram keeps in the normal course of business even if the information therein may have been based on a business record. Instead, on its face, the email was drafted in direct response to law enforcement's request for information that would later be used in a criminal prosecution. *See* Gov't Mot. Ex. 1 ("In keeping with our desire to cooperate with competent authorities . . . we are voluntarily providing this reply and / or the enclosed information."). For Sixth Amendment purposes, allowing the government to admit the email would be no different than allowing an agent to testify about a conversation he had with one of Telegram's employees as part of his investigation of the case. As such, this Court must deny the government's request to admit this email or violate Mr. Brown's constitutional rights.

WHEREFORE Defendant respectfully requests the Court deny the government's motion in limine.

Respectfully submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

s/ *Scott Berry*
Scott Berry
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0525561
250 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Scott_Berry@FD.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on April 7, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Scott Berry*
Scott Berry