**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-CR-80208-AMC**

**UNITED STATES OF AMERICA**

**vs.**

**KENNETH WAYNE BROWN III,**

**Defendant.**
_______________________________________/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM**

Kenneth Wayne Brown, III ("Defendant") did not solely possess or collect child pornography – an offense that is itself deserving of significant punishment – nor did he solely distribute child pornography – an even more egregious offense deserving of heightened punishment; the Defendant created a price sheet and *sold* child pornography, profiting financially from the depraved sexual abuse of children, mocked the intelligence of purported minors he claimed he sought naked photos from, and proclaimed his goal of molesting an 8-9-year old little girl. Defendant's Motion for Downard Variance and Sentencing Memorandum (DE 85) asks the Court to vary downward from his advisory guideline range of 235 to 240 months based on his age, lack of criminal history, recent autism spectrum disorder diagnosis, and his dissatisfaction with the correct application of the advisory sentencing guidelines to his conduct. For the below stated reasons, the United States submits that a variance is not warranted and respectfully requests a sentence at the low end of the defendant's guideline range; 235 months.

## I. OFFENSE CONDUCT

On November 19, 2025, Defendant confirmed to an undercover officer (UC) that he was a seller of child sexual abuse material (CSAM), indicated the youngest child in his materials was

"probably 7," and provided a price sheet for CSAM videos. DE 91; Presentence Investigation Report (PSI) ¶ 14. For $10, Defendant would send 30 videos of children being sexually abused; for $30 dollars, 100 videos of children being sexually abused; at the high end of the price sheet, $100 for 800 videos depicting the sexual abuse of children. *Id*. Defendant left no ambiguity regarding the nature of the materials, sending a 24-second sample video showing a prepubescent little girl performing oral sex on an adult male. *Id.* at ¶ 15. Defendant also left no ambiguity as to his status as a seller, telling the UC that his CashApp and Venmo were permanently banned, instead providing a PayPal account name for payment, explaining "that's the problem with this selling shit." *Id*. After a price negotiation, the UC sent Defendant $30 via PayPal, noting the reason for the transaction as "Lunch," at the Defendant's direction. *Id* at ¶ 16. Defendant subsequently sent 240 videos of CSAM to the UC, including videos depicting prepubescent little girls being penetrated and bound. *Id.*

Defendant's conversation with the UC did not stop with the sale of these videos. Defendant explained that he was "into" the videos himself, expressing his "love" for "twerk vids" and "whatever [he] can find a new fucking or bj" video. *Id*. at ¶ 17. Defendant also bragged about getting naked pictures from middle schoolers and high schoolers on Snapchat, the youngest being 10 years old, stating that middle schoolers are "pretty dumb" and that he would send a photo of his genitals "and see if they big enough hoes or not." *Id.* Defendant also explained his plan to engage in sexual activity with his 8-9 year old cousin, stating he was rubbing and grabbing the child for a period and was going to try to "get lucky" and "make her" perform oral sex on him. *Id*.

Separate from the sale to the UC, Defendant has been connected to two other investigations related to the distribution of CSAM. PSI ¶¶ 8-9, 18-19. In August 2025, the U.S. Naval Criminal Investigative Service (NCIS) in Japan alerted FBI Miami that they recovered communications

between a Navy service member and an individual later determined to be the Defendant, which showed the Defendant sending CSAM files and a PayPal link for payment. *Id*. at ¶¶ 8-9. During the UC investigation, FBI Miami discovered an investigation in New Orleans involving communications between the New Orleans subject and an account later tied to the Defendant which showed the Defendant sending 700 videos in exchange for $20. *Id*. at ¶¶ 18-19.

Consistent with Defendant's admission to the UC that he was "into" the CSAM materials, a post-arrest search of Defendant's cell phone in December 2025 revealed: (1) 56 videos and 1 image of CSAM, (2) several thousand files of child sex themed media, including artificial intelligence (AI) generated videos portraying the sexual abuse of prepubescent girls, animated media portraying the sexual abuse of prepubescent girls, pictures and videos of prepubescent girls dancing provocatively, and videos of adult men masturbating and ejaculating onto images of prepubescent girls, and (3) communications related to the exchange and collection of CSAM and child sex themed material. PSI ¶¶ 24-25. The search of the phone also revealed the installation of two applications known to be used to anonymize the user or otherwise avoid law enforcement detection; a virtual private network (VPN) and a text over IP service that allows a user to send text messages from a number not tied to their device. *Id*. at ¶ 24.

Similar to the videos distributed to the UC, the CSAM found on Defendant's device included the penetration of prepubescent little girls and other depictions of sexual abuse. PSI ¶ 25.

The PSI set Defendant's Total Offense Level at 38, with a Criminal History Category of I, for a guideline range of 235 months to 240 months. PSI ¶¶ 47, 50, 89.

## II. ARGUMENT

A sentence of 235 months imprisonment is sufficient, but not greater than necessary to ensure the objectives of 18 U.S.C. § 3553(a). Indeed, a downward variance is not appropriate in

this case given the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(1), (2).

Defendant seeks an unspecified "significant" downward variance from the low end of the guideline range based on his age, lack of criminal history, recent autism spectrum disorder diagnoses, and his dissatisfaction with the correct application of the advisory sentencing guidelines to his conduct. Defendant's arguments fail to adequately account for the seriousness of the nature and circumstances of his offense which emphasize the heightened need for a sentence that accomplishes the goals outlined in 18 U.S.C. § 3553(a)(2).

A. Nature and Circumstances of the Offense

The nature and circumstances of the offense involve the Defendant possessing and selling hundreds of files depicting the horrific sexual abuse of children. These videos memorialize the sexual abuse in a format that will be available to viewers indefinitely and Defendant's conduct in sharing these videos contributes to the ongoing harm suffered by the children who were abused for their production. Indeed, the Supreme Court has long recognized that the circulation of child pornography files inflicts harm to the victims who were sexually abused in the making of the images and videos and that the demand for child pornography further harms children in part because it drives production. *See Paroline v. United States*, 572 U.S. 434, 439–40 (2014) (citing *New York v. Ferber*, 458 U.S. 747, 749 (1982)). The government anticipates filing one or more victim impact statements in this case which illustrates this reality, explaining the pain a victim

often feels with the knowledge that people like the Defendant share and take pleasure in the worst moments of his or her life.[1]

Instead of seeing this material as haunting, Defendant took pleasure from it. Beyond taking pleasure from it, Defendant decided to profit from it – to make money from the depraved abuse of children. Not once, but so many times that he created a price sheet and was permanently banned from Venmo and CashApp. Moreover, the Defendant's conversation with the UC shows he talked about taking that sexual interest in children a step further, not just viewing and sharing CSAM videos, but sending photos of his genitals and seeking nude photos in return from children as young as 10 years old, and hoping to be hands-on with an 8-9-year old family member. The seriousness of this conduct necessitates a sentence within the advisory guideline range.

Defendant argues that he should receive a downward variance in part because the guideline applicable to his case, U.S.S.G. § 2G2.2, allegedly fails to distinguish between the least and worst offenders because some of the specific offense characteristics that apply to his case apply in most cases under that section and that it therefore fails to achieve the guideline's goal of proportionality. DE 85 at 7-8. However, the conduct that justifies those enhancements reflects the institutional expertise of the United States Sentencing Commission and the directives provided to the Commission from Congress. Even assuming arguendo that some of the specific offense characteristics applicable to Defendant's case commonly apply to other cases, that fact does not lead to the conclusion that a downward variance is appropriate in this case. *See e.g. United States v. Bolser*, 814 F. App'x 449, 450 (11th Cir. 2020) (upholding low-end guideline sentence in receipt

[1] The government previously received three victim impact statements. In the process of conferring with the victim's attorneys regarding sealing and the Court's generative AI disclosure requirement, one victim withdrew her request for an impact statement to be submitted, one victim indicated she may submit an updated victim impact statement, and the government is still waiting to hear the position of one victim.

and possession of CSAM case based on U.S.S.G. § 2G2.2 which included the same specific offense characteristics highlighted by Defendant).

Indeed, the Judiciary Sentencing Information (JSIN) provided by the United States Sentencing Commission for fiscal years 2021-2025, shows that a variance is far from required.[2] *See* United States Sentencing Commission, *Judiciary Sentencing Information*, http://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited September 21, 2026). According to JSIN, during the last five years, there were 33 defendants whose primary guideline was §2G2.2, excluding those who received a substantial assistance departure, that had the same Final Offense Level (38) and Criminal History Category (I) as Defendant. *Id.* For those 33 defendants, the average sentence imposed was 204 months and the median sentence imposed was 235 months. *Id.* Including any defendants who received a substantial assistance departure, 55 percent were sentenced within the guideline range. *Id.*

Defendant's conduct in this case, most notably his sale of CSAM for financial gain, requires a sentence commensurate with the gravity of his crime, within the applicable guideline range.

B. History and Characteristics of the Defendant

Defendant is a 21-year old man who was working and helping take care of his minor siblings at the time of his criminal conduct. PSI ¶ 79. Defendant argues that the Court should vary downward due to his age, recent autism diagnosis, and his lack of criminal history. The Court should not.

[2] Notably, there is generally limited utility in statistics such as these, which fail to convey enough information for a useful comparison between defendants, each of whom are unique. However, contrary to Defendant's argument, these statistics show a variance is far from required simply due to the applicable guideline.

Defendant cites four Supreme Court cases – none of which relate to sex offenders – for the proposition that the defendant's age should be a significant mitigating factor in this case. DE 85 at 1-5 (citing *Miller v. Alabama*, 567 U.S. 460, (2012)*; Roper v. Simmons*, 543 U.S. 551 (2005); *Johnson v. Texas*, 509 U.S. 350 (1993); and *Graham v. Fla.*, 560 U.S. 48 (2010)). Under § 3553(a), the defendant's age is certainly a factor for the court to consider, but it is only one of many. And, in this particular case, it is not so mitigating as to justify a downward variance.

As an initial matter, each of the cases cited by the Defendant relate either to murder charges or armed burglary, rather than sexual offenses, and three out of the four cases relate to the proper sentencing exposure for minors. *Miller*, 567 U.S. at 465–69 (analyzing one case involving a 14-year old convicted of capital felony murder and aggravated robbery and a second case involving a 14-year old convicted of murder in the course of arson, holding mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes as unconstitutional); *Roper*, 543 U.S. at 556 (analyzing case involving a 17-year old convicted of murder, holding imposition of the death penalty on offenders who were minors at the time of their crimes as unconstitutional); *Johnson*, 509 U.S. at 353 (upholding death penalty sentence for conviction of capital murder for defendant who was 19-years old at the time of the murder); *Graham*, 560 U.S. at 53-54 (analyzing case involving 16-year old convicted of armed burglary with assault or battery and attempted armed robbery, holding imposition of sentence to life in prison without parole unconstitutional for a juvenile offender convicted of a nonhomicide crime). As noted by the Defendant, these cases discuss the impulsivity, immaturity, irresponsibility, and recklessness of youth and a child's higher susceptibility to influence and frequent inability to assess consequences. DE 85 at 1-2. Although these cases note that these characteristics of youth are not "crime-specific," common sense dictates

that these tendencies of youth have particular applicability to hands-on violent crime, such as the murders and burglary discussed in those cases.

Those characteristics, however, logically have less applicability to a case like this one where the Defendant – a 21-year old adult – shows a sexual interest in children and repeatedly engages in the same criminal conduct. Defendant did not impulsively download or possess CSAM one time. He made it his financial business. He knew his conduct was illegal, as demonstrated through his complaint to the UC that his Venmo and CashApp were banned due to his sales of CSAM, his directive to use notes like "Lunch" to conceal his behavior, and his advice to "never show your face" when communicating with minors online. PSI ¶¶ 15-17. Defendant also demonstrated his sophistication through his awareness and ability to create multiple usernames, emails, and payment accounts to continue his conduct and the presence of two anonymity applications on his phone. *Id.* at ¶¶ 9, 15, 18, 24, 26.

Notably, Forensic Psychologist Dr. Michael Brannon's report likewise discusses the characteristics of youth cited in these cases, but fails to explain the applicability of these characteristics to sex offenses generally, and Defendant's case specifically. Far from an impulsive, rash, act where a juvenile did not assess the consequences of his actions, Defendant deliberately and repeatedly continued his conduct despite acknowledging multiple, clear, signs of its illegality and wrongfulness.

Defendant also argues the Court should vary downward due to his recent autism diagnosis. DE 85 at 5-6. Citing Dr. Brannon's report, Defendant explains that autism can make it difficult for someone like him to "learn and apply age-appropriate sexual knowledge or understand concepts and legal implications about sexuality and sexual material he finds online… [and] could also explain repetitive collection behavior regardless of any actual sexual interest in minors." DE 85

at 6. Defendant acknowledges that his autism diagnosis does not excuse his behavior, but argues that it helps explain the behavior and should mitigate punishment. *Id.*

Even though Defendant's autism diagnosis may provide context for his behavior, it does not undercut the need for his sentence to reflect the seriousness of his offense, to promote respect for the law, to deter future similar misconduct, and to protect the public from future crimes of the Defendant. Indeed, unpublished Eleventh Circuit decisions make clear that an autism diagnosis does not compel a sentencing variance and should instead be considered in conjunction with the 3553(a) factors. For example, in *United States v. Bolser*, the Eleventh Circuit upheld a low-end guideline sentence for a defendant convicted of receipt and possession of child pornography that was diagnosed with autism and post-traumatic stress disorder, noting that the district court weighed the statutory factors before imposing sentence, including the Defendant's diagnoses. 814 F. App'x at 455. In *United States v. Sindoni*, the Eleventh Circuit also upheld a guideline sentence of 200 months for a 22-year old defendant convicted of distribution of child pornography who had "severe behavioral and emotional problems" who was diagnosed with depression and Asperger's syndrome, which it referred to as "a functioning form of autism."[3] 540 F. App'x 906, 906 (11th Cir. 2013).

Dr. Brannon's report notes that an autism diagnosis does not itself establish a propensity for sexual offending, pedophilic interest, or the viewing of CSAM, explaining that available research supports an individualized assessment to determine whether autism vulnerabilities contributed to the behavior. But the report does not perform such an individualized examination

[3] Notably, this defendant had a prior conviction for possession of child pornography and the district court recommended he serve his sentence in a mental health facility. *Sindoni*, 510 F. App'x at 906 n.1, 907.

of the Defendant. Nor does it suggest that Defendant was unaware of the wrongfulness of his conduct due to his age or diagnosis.

Defendant's behavior in this case went beyond repetitive collection of CSAM and sexually themed child media. It included his sale of hundreds of files of CSAM for money (¶¶ 8, 16,18), his admission to the UC that he is "into" the CSAM materials (¶ 17), particularly related to children engaging in oral and penetrative sex, his claim that he has tried and succeeded in receiving naked photos from minors as young as 10 years old (¶ 17), his explanation of his efforts to engage in hands-on sexual conduct with an 8-9 year old (¶ 17), and his communications on his phone discussing the exchange and collection of CSAM and child sex themed material (¶¶ 24-25); all of which show his sexual interest in children. And, as outlined above, Defendant's concealment behaviors show that he was aware of the wrongfulness of his conduct.

C. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant.</u>

The Defendant's conduct in this case, most notably his status as a seller of CSAM for financial gain and sexual interest in children, requires a sentence that is sufficiently serious to promote respect for the law, provide just punishment, and to adequately deter future illegal conduct and protect the public. Notably, the need for the sentence imposed to afford adequate deterrence to others, in addition to the Defendant, has heightened importance in the context of child pornography offenses given the severity of harm imposed upon its victims. The significant penalties that routinely accompany these offenses are an important tool for deterring others from engaging in the child pornography market in the future. And while the Court's ability to civilly commit Defendant after his incarceration, Defendant's sex offender registration, and forthcoming term of supervised release all aim to reduce his ability to re-offend in the future, his sentence

nonetheless needs to reflect the need for deterrence, the need to protect the public, and the seriousness of his offense.

Defendant did not suffer from a one-time impulse driven mistake of judgment. He conducted a business, with a price sheet, choosing to profit financially from the sexual abuse of children. In the course of his sales, he maneuvered around any obstacles to his continued distribution of these materials and engaged in communications with other like-minded individuals regarding their shared interest in the sexual abuse of children.

A guideline sentence of 235 months accomplishes the goals of sentencing and is sufficient, but not greater than necessary to comply with the § 3553(a) factors.

## III. CONCLUSION

Based on the foregoing, the United States respectfully submits that a downward variance in this case would not comply with the § 3553(a) factors. Accordingly, the United States respectfully recommends that the Court sentence the Defendant to the low-end of the guideline range (235 months) and deny Defendant's request for a variance.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Katie Wilson*
KATIE WILSON
Assistant United States Attorney
Florida Bar No. 1026417
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 209-1043
Fax: (561) 805-9846
Katie.Wilson2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 21, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Katie Wilson
Katie Wilson
Assistant United States Attorney